USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 02/15/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
STEVEN J. LOVETT,

                       Plaintiff,

  -against-

ACTING SUPT. SUSIE BENNETT OF
SULLIVAN CORRECTIONAL FACILITY, et al.

                       Defendants.

No. 22-CV-05462 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Plaintiff, Steven J. Lovett, a state inmate proceeding *pro se* ("Plaintiff"), brings this action pursuant to 42 U.S.C. §1983, alleging violations of his constitutional rights during his incarceration at the New York State Department of Corrections and Community Supervision, Sullivan Correctional Facility[1] ("Sullivan") against employees Acting Superintendent Susie Bennett ("Supt. Bennett"), Correction Officer Shane Topel ("CO Topel"), Correction Officer Kevin Darling ("CO Darling"), Correction Officer Felix Santos ("CO Santos"), and Classification Analyst Jaclyn Chafetz ("Analyst Chafetz") (together, "Defendants"). Before the Court is Defendants' Motion to Dismiss (the "Motion") Plaintiff's Second Amended Complaint ("SAC", ECF No. 24) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the following reasons, Defendants' Motion is GRANTED.

## FACTUAL BACKGROUND

      The following facts are drawn from the SAC and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In 2015, Plaintiff was present in

---

[1] Plaintiff is currently incarcerated at Green Haven Correctional Facility ("Green Haven"). (SAC at 2.)

Sullivan during an incident which resulted in the death of another incarcerated individual at the hands of correction officers. (SAC at 4.) In 2019, Plaintiff testified as a witness in the wrongful death suit (the "Civil Action") that followed and provided testimony against the correction officers involved. (*Id.*) Plaintiff was not incarcerated at Sullivan during the Civil Action. (*Id.*) Following trial, the family of the deceased received a substantial monetary award. (*Id.*)

In March 2022, following the conclusion of the Civil Action, Plaintiff was transferred to Sullivan. (*Id.*) Plaintiff alleges that Analyst Chafetz "know[ing]ly and willi[ng]ly" transferred him back to Sullivan despite knowing it would "place [his] life in danger" because Sullivan still employed some of the correction officers against whom he testified. (*Id.*) Plaintiff contends that this transfer placed him "in a conflict of interest to [his] life" and that, while at Sullivan, he was extorted for money as a result. (*Id.*) Plaintiff further alleges that Sullivan correction officers directed other inmates to threaten him and "throw burnt cigarette[] butt's [*sic*] in [his] cell, [which] in prison…[is] a sign of burning you out [of] your cell." (*Id.* at 5.) Plaintiff claims that he wrote to Supt. Bennett about these grievances and "was denied mental consult," though he "was seen[] after writing [the] Unit Chief." (*Id.*)

Plaintiff concedes that he did not suffer any physical injury while at Sullivan, but insists that he did suffer emotional and mental injures to that point that he was afraid to come out of his cell for recreational activities. (*Id.*) Additionally, he contends that his transfer from Sullivan to Green Haven during the pendency of the present action constitutes an independent injury because Green Haven is still in the same region as Sullivan and further away from his home and family in Rochester, New York. (*Id.*)

## PROCEDURAL HISTORY

On June 27, 2022, Plaintiff commenced the present action against Defendants. (ECF No. 2.) On July 27, 2022, the Court granted Plaintiff leave to file an amended complaint naming as defendants those individuals who were personally and directly involved in the alleged violations of his constitutional rights. (ECF No. 4.) On December 1, 2022, Plaintiff was granted leave to amend his complaint a second time to identify the previously named John Doe defendant who were purportedly responsible for Plaintiff's transfer to Sullivan in March 2022. (ECF No. 18.) On December 20, 2022, Plaintiff filed the SAC. (ECF No. 24.) On May 16, 2023, the Defendants filed the instant Motion (ECF No. 46), as well as a memorandum of law in support thereof ("Defs.' MOL", ECF No. 47). Plaintiff filed an opposition to the Motion. (ECF No. 54.) Defendants also filed a reply memorandum in further support of their Motion. (ECF No. 55.)

## LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss Standard/*Pro Se* Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for "failure to state a claim upon which relief can be granted," a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

[2] Defendants also seek dismissal pursuant to Rule 12(b)(1). (Defs.' MOL at 1.) Their sole argument in support of dismissing the SAC pursuant to Rule 12(b)(1) is that "Plaintiff has not identified any violation of his Constitutional rights that would confer jurisdiction to this court." (*Id.* at 2.) As this is not a separate argument addressing the Court's lack of subject matter jurisdiction, but rather indistinguishable from Defendants' argument that the SAC fails under Rule 12(b)(6), the Court will subsume any Rule 12(b)(1) argument the Defendants were attempting to make into its overall analysis of the viability of Plaintiff's claims under Rule 12(b)(6).

The Court will accept the facts in a complaint as true "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual content pleaded allows the Court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013). The Court liberally construes *pro se* complaints, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), "to raise the strongest arguments that they suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006). Despite the liberal construction of *pro se* complaints, however, "*pro se* plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "[M]ere[] conclusory allegations masquerading as factual conclusions…are insufficient to defeat a motion to dismiss." *Jackson v. Cnty. of Rockland*, 450 Fed. Appx. 15, 18, 19 (2d Cir. 2011) (citation omitted). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a *pro se* plaintiff's] complaint supports, [it] cannot invent factual allegations that [a *pro se* plaintiff] has not pled." *Id.* at 170.

**B. 42 U.S.C. § 1983 Claims**

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

**DISCUSSION**

**A. Claims Against Defendants CO Topel, CO Darling, CO Santos, and Supt. Bennett**

Plaintiff fails to assert personal involvement on the part of CO Topel, CO Darling, CO Santos, and Supt. Bennett in the SAC.

It is well settled that in order to hold a defendant responsible for a constitutional deprivation, a plaintiff must demonstrate, *inter alia*, the defendant's personal involvement in the deprivation. *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). To do so, the plaintiff must "allege a tangible connection between the acts of a [d]efendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). A showing of personal involvement

is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Boley v. Durets*, 687 Fed. Appx. 40, 41 (2d Cir. 2017); *see also McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

Claims involving prison officials "require[] a showing of more than the linkage in the prison chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676); *see also Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir. 1989) ("The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the [d]efendant is required.") Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted).

Here, Plaintiff fails to allege facts indicating personal involvement by CO Topel, CO Darling, CO Santos, or Supt. Bennett in any of the alleged constitutional deprivations asserted by Plaintiff. In fact, Plaintiff does not even *name* CO Topel, CO Darling, or CO Santos in his statement of facts. Supt. Bennett, by contrast, receives a passing mention in the SAC that Plaintiff allegedly wrote to her, but was "denied mental consult." (SAC at 5.) As written, the allegations in the SAC concerning Supt. Bennett are ambiguous. Plaintiff does not provide much detail concerning what Supt. Bennett did to him or what connection exists, if any, to any of the purported violation of his constitutional rights. Even giving Plaintiff every favorable inference, the gravamen of Plaintiff's claim(s) is that he felt unsafe in Sullivan, not that he was "denied mental consult" or treatment.

In sum, the SAC contains no particularized allegations that CO Topel, CO Darling, CO Santos, and/or Supt. Bennett caused Plaintiff to suffer any constitutional deprivation or otherwise caused injury to the Plaintiff. Without a "tangible connection" between these defendants and an injury suffered by Plaintiff, any claim against them must be dismissed. *Bass*, 790 F.2d at 263. Accordingly, all claims against CO Topel, CO Darling, CO Santos, and Supt. Bennett are dismissed for lack of personal involvement.

### B. Eighth Amendment Claim Against Analyst Chafetz

Analyst Chafetz is the only named defendant specifically mentioned by Plaintiff in the SAC.[3] Plaintiff claims that Analyst Chafetz, who is located in Albany, New York, "know[ing]ly and willi[ng]ly" transferred him to Sullivan despite knowing it would "place [his] life in danger." (SAC at 4.) The Court construes the allegations against Analyst Chafetz as an Eighth Amendment failure to protect claim.

Under the Eighth Amendment, prison officials must take reasonable measures to guarantee the safety of inmates in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials may be liable "for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). To determine whether a prison official's actions rise to the level of deliberate indifference, a plaintiff must demonstrate (1) "that he is incarcerated under conditions posing a substantial risk of serious harm" and (2) "that the defendant prison officials possessed sufficient culpable intent." *Id*. (internal citation omitted). A defendant possesses culpable intent when he or

---

[3] Defendants noted in their Memorandum of Law in Support of Defendants' Motion to Dismiss that based on review of the Docket Sheet, Analyst Chafetz has not yet been served with process. Defects in service can be procedural grounds for dismissal in this Circuit. *See DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). However, as it is preferable to resolve a claim on the merits, *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995), the Court will focus instead on the substantive defects that require the dismissal of Plaintiff's claims against Analyst Chafetz.

she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer*, 511 U.S. at 837. In addition, a cognizable claim for failure to protect generally "requires a factual allegation that a plaintiff suffered actual physical harm." *Campbell v. Gardiner,* No. 12-CV-6003P, 2014 WL 906160, at *4 (W.D.N.Y. Mar. 7, 2014). Conclusory statements that indicate a prison official put an inmate's "safety at risk" without further asserting facts that support an inference of actual or imminent harm because of the prison official's conduct will not suffice. *Id*. at *5; *see also Bouknight v. Shaw*, No. 08 CIV 5187(PKC), 2009 WL 969932, at *4 (S.D.N.Y. Apr. 6, 2009) ("if the plaintiff fails to allege—with concrete facts, not conclusory assertions—that he has suffered an objectively 'sufficiently serious' injury…then the claim must be dismissed.").

Here, the SAC fails to assert sufficient facts to support a finding that Analyst Chafetz acted with the deliberate indifference necessary for an Eighth Amendment violation. While Plaintiff alleges that Analyst Chafetz was responsible for his transfer back to Sullivan, other than a perceived and speculative risk of harm, he provides no further facts concerning any particularized harm he faced at the prison. At best, Plaintiff makes a general and conclusory statement that his mere placement at Sullivan, following his proffered testimony in the Civil Action, placed him at risk or fear of risk of harm. While he alleges that several unnamed correction officers, against whom he testified at the Civil Action, continued to work at Sullivan, he does not allege that any of those officers actually threatened or harmed him. At most, Plaintiff asserts that unidentified inmates may have tossed lit cigarette butts in his cell, which is perceived as a threat among the inmates. (*See* SAC at 5.) Without more, however, the alleged perceived threats are conclusory and speculative. *See Campbell*, 2014 WL 906160, at *5 (conclusory statements that indicate a prison

official put an inmate's "safety at risk" without further facts that support an inference of actual or imminent harm will not survive a motion to dismiss).

Furthermore, even if Analyst Chafetz did not "look[] for threat's [*sic*]" prior to authorizing Plaintiff's transfer, the SAC does not allege that Plaintiff suffered any actual harm. Although Plaintiff makes a passing reference to being "extorted" and that Sullivan correction officers purportedly have the ability to direct other inmates to retaliate against him, Plaintiff fails to assert any particularized facts or identify any instance where he was actually threatened or harmed. *See Bouknight*, 2009 WL 969932, at *3 (holding that verbal harassment and name calling, absent physical injury, do not constitute cognizable constitutional violations under Section 1983) (internal citations omitted).

### C. First Amendment Claim Against Analyst Chafetz

The Court also construes the SAC as asserting a First Amendment retaliation claim against Analyst Chafetz. To survive a motion to dismiss, a prisoner asserting a retaliation claim must allege facts to meet three separate criteria, as delineated by the Second Circuit in *Davis v. Goord*: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" 320 F.3d 346, 352 (2d Cir. 2003) (*quoting Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)). The Second Circuit has "instructed district courts to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis,* 320 F.3d at 352). Retaliation claims "stated in wholly conclusory terms" are insufficient. *Id.* (internal quotation marks and citations omitted). In

a Section 1983 claim wherein it is alleged that a state actor retaliated against a plaintiff for exercising a constitutional right, the plaintiff "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996).

Regarding the first prong of the *Davis* test, the Second Circuit has held that "[v]oluntarily appearing as a witness in a public proceeding or a lawsuit is a kind of speech that is protected by the First Amendment." *Burns v. Martuscello*, 890 F.3d 77, 92 (2d Cir. 2018) (quoting *Jackler v. Byrne*, 658 F.3d 225, 239 (2d Cir. 2011)). Here, Plaintiff alleges that he provided testimony at the Civil Action. Plaintiff's proffered testimony qualifies as protected speech under the First Amendment, and he thereby satisfies the first prong.

Regarding the second prong, Plaintiff alleges that Analyst Chafetz transferred him back to Sullivan after the trial despite knowing it would "place [his] life in danger" because Sullivan still employed some of the correction officers against whom he testified. (SAC at 4.) A prisoner has no constitutional right to remain at any particular prison facility. *See Meachum v. Fano,* 427 U.S. 215, 224–225 (1976) (the state has the power to confine a prisoner to any of its prisons and due process does not in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system, even where conditions in one prison are "more disagreeable" or one prison has "more severe rules"). Prison officials have broad discretion to transfer prisoners and they may do so for any reason or no reason at all. *See Montanye v. Haymes,* 427 U.S. 236, 243 (1976); *Meriwether v. Coughlin,* 879 F.2d 1037, 1045 (2d Cir. 1989); *Respress v. Coughlin,* 585 F.Supp. 854, 857 (S.D.N.Y. 1984). However, prison officials may not transfer an inmate solely in retaliation for the exercise of his constitutional rights. *Meriwether,* 879 F.2d at

1046. The Court finds that a transfer which was solely motivated for the purpose of placing an inmate's life in danger can constitute adverse action. Plaintiff has therefore adequately plead the second prong of the *Davis* test.

Regarding the third prong of the *Davis* test, Plaintiff fails to establish the necessary causation for a First Amendment violation. To prove causation, a plaintiff must allege facts to support a finding that the "protected speech was a substantial motivating factor in the adverse …action.." See *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167 (2d Cir. 2006) (internal citations omitted). Plaintiff contends that Analyst Chafetz transferred him "willi[ng]ly" with the knowledge that it would endanger his life. (SAC at 4.) While Plaintiff's allegations suggest that the decision to transfer him to Sullivan was connected to his testimony in the Civil Action, Plaintiff does not allege that Analyst Chafetz was aware of the Civil Action, let alone that Plaintiff testified therein.

The passage of time between Plaintiff's protected action, namely testifying in the Civil Action, and the alleged retaliatory transfer is also troubling. It is well settled that the courts in this Circuit have not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action. *See Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001). A plaintiff, however, may sufficiently plead "a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action" because "generally, temporal proximity is strong circumstantial evidence of improper intent." *See Raymond v. City of New York*, 317 F. Supp. 3d 746, 773 (S.D.N.Y. 2018) (internal citations omitted). For example, the passage of only six months between the dismissal of plaintiff's lawsuit and an allegedly retaliatory beating by officers, one of whom was a defendant in

the prior lawsuit, has been deemed sufficient to support an inference of a causal connection. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). Here, as alleged in the SAC, the incident which resulted in the Civil Action occurred in 2015, while Plaintiff testified in the Civil Action in 2019. Plaintiff commenced this action in June 2022, approximately three years after he testified. While Plaintiff does not provide specific dates, the allegations suggest that more than two years (twenty-four months) passed, perhaps even three years, from the date Plaintiff testified in the Civil Action and his subsequent transfer to Sullivan. Such a temporal gap provides strong circumstantial support which minimizes any connection between the protected speech and the adverse action. Moreover, a plaintiff "may not rely on conclusory assertions of retaliatory motive to satisfy the causal link." *Raymond*, 317 F. Supp. 3d at 774 (*quoting Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)). Accordingly, the Court determines that Plaintiff has failed to allege a plausible First Amendment retaliation claim.

### D. Leave to Amend

"[A] pro se complaint is to be read liberally" thus, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991). However, "[w]hile pro se plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile." *Hassan v. United States Dep't of Veteran Affairs*, 137 Fed. Appx. 418, 420 (2d Cir. 2005) (internal citations omitted).

Given that the Court has previously granted Plaintiff leave multiple times to file an amended pleading and he has not yet asserted a plausible claim, the Court dismisses all of the claims stated in the SAC with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 46 and terminate the action. The Clerk of Court is further directed to mail a copy of this Opinion and Order to *pro se* Plaintiff at his address listed on ECF and to show service on the docket. This constitutes the Court's Opinion and Order.

Dated: February 15, 2024　　　　　　　　　　　　SO ORDERED:
White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge